**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **EDWARD HERNANDEZ,** | : | |
| **Plaintiff** | : | |
| | : | **No. 1:16-cv-02407** |
| **v.** | : | |
| | : | **(Judge Kane)** |
| **WARDEN MARK ROCKOVICH,** | : | |
| <u>et al.</u>, | : | |
| **Defendants** | : | |

## <u>MEMORANDUM</u>

Plaintiff Edward Hernandez ("Plaintiff"), an inmate currently incarcerated at the Luzerne County Correctional Facility, Wilkes-Barre, Pennsylvania ("LCCF"), initiated this civil rights action on December 5, 2016, by filing a complaint pursuant to 42 U.S.C. § 1983. (Doc. No. 1.) This matter is proceeding on an amended complaint filed on June 6, 2017. (Doc. No. 16.) Currently before the Court is Defendants' motion to dismiss Plaintiff's amended complaint. (Doc. No. 23.) The motion has been fully briefed and is ripe for disposition.

## I.     BACKGROUND

Initially proceeding <u>pro se</u>, Plaintiff filed this action against, <u>inter alia</u>, Warden Rockovich and several correctional officers employed at LCCF. (Doc. No. 1.) Plaintiff claimed that certain correctional officers assaulted him and filed false misconduct charges against him. (<u>Id.</u>) By Order dated January 30, 2017, Plaintiff was granted leave to proceed <u>in forma pauperis</u> and the Court dismissed the complaint against a number of the Defendants but granted Plaintiff leave to file an amended complaint. (Doc. No. 8.) Because Plaintiff did not file an amended complaint, on March 27, 2017, the Court directed that the complaint be served on Defendants Sleboda, Baluta, Renfer, Hudak and Gilhooley who were then named as defendants. (Doc. No. 10.)

On April 3, 2017, Attorneys Curt M. Parkins and Matthew Thomas Comerford entered appearances on behalf of Plaintiff and filed a motion for leave to file an amended complaint. (Doc. Nos. 12-14.) This Court granted that motion on April 7, 2017 (Doc. No. 15), and on June 6, 2017, Plaintiff, through counsel, filed an amended complaint (Doc. No. 16). The amended complaint names as Defendants Luzerne County, Warden Rockovich, Deputy Warden Larson, Sergeant Baluta, Corrections Officer Renfer, and Detective Capitano. (Id.)

Plaintiff alleges that while housed at LCCF as a pretrial detainee, he and his cellmate were investigated for possible marijuana use, which required Plaintiff to be escorted to another location within the facility. (Doc. No. 16, ¶¶ 22, 23.) Renfer and Baluta were the escorting officers. (Id. ¶ 25.) During the escort, Plaintiff alleges that Renfer handcuffed him behind his back. (Id. ¶ 27.) Plaintiff avers that while he was handcuffed behind his back, Renfer pulled Plaintiff's arms up towards the middle of his back, causing him extreme pain. (Id. ¶ 28.) Plaintiff alleges that when he complained as to this treatment, Renfer lifted Plaintiff in the air and slammed him head-first into the concrete floor. (Id. ¶ 29.) As a result, Plaintiff claims he suffered a broken neck, a scalp laceration requiring twenty-eight (28) stiches, and herniated discs. (Id. ¶ 30.)

Plaintiff alleges the following claims in his amended complaint: (1) a Monell claim against Luzerne County and Larson; (2) a failure to protect claim against Luzerne County, Larson, and Rockovich; (3) a failure to protect/failure to intervene claim against Baluta; (4) an excessive force claim against Renfer; (5) an access-to-the-courts claim against Larson, Rockovich, and Capitano; and (6) an assault and battery claim against Renfer. (Id. at 7-11.) Plaintiff seeks compensatory damages in excess of $150,000.00, as well as punitive damages, costs, attorney's fees, and declaratory relief. (Id. at 11.)

## II.     LEGAL STANDARD

### A.     Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)

Federal notice and pleading rules require the complaint to provide the defendant notice of

the claim and the grounds upon which it rests.  Phillips v. Cty. of Allegheny, 515 F.3d 224, 232

(3d Cir. 2008).  The plaintiff must present facts that, accepted as true, demonstrate a plausible

right to relief.  Fed. R. Civ. P. 8(a).  Although Federal Rule of Civil Procedure 8(a)(2) requires

"only a short and plain statement of the claim showing that the pleader is entitled to relief," a

complaint may nevertheless be dismissed under Federal Rule of Civil Procedure 12(b)(6) for its

"failure to state a claim upon which relief can be granted."  See Fed. R. Civ. P. 12(b)(6).

When ruling on a motion to dismiss under Rule 12(b)(6), the court accepts as true all

factual allegations in the complaint and all reasonable inferences that can be drawn from them,

viewed in the light most favorable to the plaintiff.  See Ashcroft v. Iqbal, 556 U.S. 662, 679

(2009); In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010).  To prevent

dismissal, all civil complaints must set out "sufficient factual matter" to show that their claims

are facially plausible.  See Iqbal, 556 U.S. at 678; Fowler v. UPMC Shadyside, 578 F.3d 203,

210 (3d Cir. 2009).  The plausibility standard requires more than a mere possibility that the

defendant is liable for the alleged misconduct:  "[W]here the well-pleaded facts do not permit the

court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has

not 'show[n]' – 'that the pleader is entitled to relief.'"  Iqbal, 556 U.S. at 679 (citing Fed. R. Civ.

P. 8(a)(2)).

Accordingly, the United States Court of Appeals for the Third Circuit has identified the

following steps that a district court must take when reviewing a 12(b)(6) motion: (1) identify the

elements that a plaintiff must plead to state a claim; (2) identify any conclusory allegations

contained in the complaint that are "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (internal citations and quotation marks omitted). The Third Circuit has specified that in ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

In the context of pro se prisoner litigation, the court must be mindful that a document filed pro se is "to be liberally construed." Estelle v. Gamble, 429 U.S. 97, 106 (1976). A pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can be dismissed for failure to state a claim only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. Haines v. Kerner, 404 U.S. 519, 520-21 (1972).

**B.      Motion to Strike Pursuant to Federal Rule of Civil Procedure 12(f)**

Rule 12(f) allows a court to "strike from a pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). While the court "posess[es] 'considerable discretion in disposing of a motion to strike under Rule 12(f),' such motions are 'not favored and usually will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues.'" Hanselman v. Olsen, No. 4:05-cv-1834, 2006 WL 47655, *1 (M.D. Pa. Jan. 9, 2006) (citing Krisa v. Equitable Life Assurance Soc., 109 F. Supp. 2d 316 (M.D. Pa.

2000)) (citations omitted).  In essence, the striking of a pleading under Rule 12(f) is "a drastic remedy to be resorted to only when required for the purpose of justice."  U.S. v. Consol. Coal Co., No. 89-cv-2124, 1991 WL 333694, *1 (W.D. Pa. July 5, 1991).  As with a motion to dismiss, a motion to strike is "to be decided 'on the basis of the pleadings alone.'"  North Penn Transfer, Inc. v. Victaulic Co. of Am., 859 F. Supp. 154, 159 (E.D. Pa. 1994) (quoting Total Containment, Inc. v. Environ Prods. Inc., No. 91-cv-7911, 1992 WL 208981, *1 (E.D. Pa. Aug. 19, 1992)).

### C.    Claims Asserted Pursuant to 42 U.S.C. § 1983

In order to state a viable claim under § 1983, a plaintiff must plead (1) that the conduct complained of was committed by a person acting under color of state law, and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States.  Groman v. Twp. of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995); Shaw by Strain v. Strackhouse, 920 F.2d 1135, 1141-42 (3d Cir. 1990); Richardson v. Min Sec Cos., No. 3:cv-08-1312, 2008 WL 5412866, at *1 (M.D. Pa. Dec. 29, 2008).

Moreover, in order for a § 1983 claim to survive a motion to dismiss, the plaintiff must sufficiently allege that the defendant was personally involved in the act or acts that the plaintiff claims violated his rights.  Solan v. Ranck, 326 F. App'x 97, 100 (3d Cir. 2009); Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  Therefore, supervisors cannot be held liable under § 1983 on the traditional standard of respondeat superior.  See Santiago, 629 F.3d at 128. Instead, there are two theories of supervisory liability that are applicable to § 1983 claims: (1) "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations"; and (2) policymakers may also be liable under §

1983 "if it is shown that such defendants, 'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm.'"  A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004).

## III.    DISCUSSION

Defendants filed a motion to dismiss all but Counts IV and VI of Plaintiff's amended complaint.  The Court addresses Defendants' arguments in turn.

### A.    Claims Against Rockovich

Defendants move to dismiss Rockovich from this action, alleging that he was not yet employed at LCCF at the time of the events giving rise to the amended complaint.  (Doc. No. 24 at 5.)  Specifically, Defendants argue that Rockovich was not employed at LCCF until "some period after June 28, 2016."  (Id.)  While discovery in this matter may reveal that Rockovich was not yet employed at LCCF during the time of the events giving rise to the complaint, it is improper for the Court to consider this argument on a motion to dismiss, as it requires the Court to examine documents outside the pleadings.  Rather, on a motion to dismiss, the Court accepts as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff.  See Ashcroft v. Iqbal, 556 U.S. at 679.  Accordingly, Defendants' motion to dismiss Defendant Rockovich from the action will be denied without prejudice.

### B.    Count I: Municipal Liability Claim

Defendants move to dismiss Count I, which is asserted against Luzerne County and Larson, contending that Plaintiff has failed to identify a municipal policy or custom that caused the alleged constitutional violations.  (Doc. No. 24 at 10.)  Section 1983 makes liable "every

person" who deprives another of civil rights under color of state law. See Burns v. Reid, 500 U.S. 478, 497 (1991). Municipalities and other local governmental units are "persons" subject to liability under § 1983. See Monell v. N.Y. City Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). Accordingly, Luzerne County is a municipality subject to liability as a "person" under § 1983. See id.

However, "[u]nder Monell, a municipality cannot be subjected to liability solely because injuries were inflicted by its agents or employees." Jiminez v. All Am. Rathskeller, Inc., 503 F.3d 247, 249 (3d Cir. 2007); see also Monell, 436 U.S. at 691 (stating that a municipality cannot be held liable for the actions of its employees under § 1983 under theory of respondeat superior). Rather, to sustain a municipal liability claim, a plaintiff must allege (1) the existence of a municipal custom or policy, and (2) that the municipal employees violated the plaintiff's civil rights while acting pursuant to this custom or policy. Id. at 658; White v. Brommer, 747 F. Supp. 2d 447, 462-63 (E.D. Pa. 2010). A municipality can be found liable under § 1983 only if the conduct alleged to be unconstitutional either "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" or is "visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision-making channels." Monell, 436 U.S. at 690-91. "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Jiminez, 503 F.3d at 249. To establish municipal liability based upon a custom or practice, the plaintiff must allege that "through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." Bd. of Cty. Comm'rs of Bryan Cty. v. Brown, 520 U.S. 397, 404 (1997). A plaintiff

must also establish an "affirmative link" or "plausible nexus" between the custom or practice and the alleged constitutional deprivation. Bielevicz v. Dubinon, 915 F.2d 845, 850-51 (3d Cir. 1990).

In opposition to the motion to dismiss, Plaintiff claims that he has sufficiently alleged municipal liability based on custom, practice, and deliberate indifference, in addition to liability by operation of a failure to train theory. (Doc. No. 26.) The Court addresses each theory in turn.

### i. Custom and Practice/Deliberate Indifference

Defendants argue that Plaintiff has not identified any particular policy, practice, or custom that directly caused the alleged constitutional violation. (Doc. No. 24 at 10.) A governmental entity is liable for its employees' conduct when their acts are deemed to be the result of a policy or custom of the governmental entity for whom the employee works. A government agency is generally accountable for an employee's act when: (1) an appropriate officer or entity promulgates a statement of policy and the employee's act is an implementation of that policy; (2) the act of the policymaker violates federal law; and (3) a policymaker fails to act affirmatively despite the obvious need for action to control agents of the government. Natale v. Camden Cty. Corr. Facility, 318 F.3d 575, 584 (3d Cir.2003). It appears that Plaintiff alleges that Luzerne County is liable under the third scenario: that inaction on the part of policymakers resulted from deliberate indifference to its known or obvious consequences. Brown, 520 U.S. at 407.

Deliberate indifference requires "a stringent standard of fault." Id. at 410. Accordingly, "[a] showing of simple or even heightened negligence will not suffice." Id. at 407. To satisfy this standard, a plaintiff must adduce evidence that the municipality (1) had notice that similar rights violations had occurred on such a widespread basis that they were likely to occur again,

and (2) failed to act to address that risk despite the known or obvious consequences of inaction. Berg v. Cty. of Allegheny, 219 F.3d 261, 276 (3d Cir. 2000). Stated another way, "[a] plaintiff need not show that a given harm was the direct result of a formal decisionmaking process;" rather, a plaintiff must demonstrate that "policymakers were aware of similar unlawful conduct in the past, but failed to take precautions against future violations, and that this failure, at least in part, led to [the] injury." Turner v. City of Phila., 22 F.Supp. 2d 434, 437 (E.D. Pa. 1998) (quoting Bielevicz, 915 F.2d at 851). Generally, a municipal liability claim will survive a motion to dismiss only if it "allege[s] conduct by a municipal decisionmaker." McTernan v. City of York, Pa., 564 F.3d 636, 658 (3d Cir. 2009).

Notice is generally established by a pattern of prior constitutional violations. See Beck v. City of Pittsburgh, 89 F.3d 966, 975 (3d Cir. 1996) (holding that pattern of written complaints of police officer violence was sufficient for reasonable jury to conclude that the municipality knew or should have known of the violations). Once a plaintiff has demonstrated that the municipality was "aware of similar unlawful conduct in the past," deliberate indifference must be established by showing that the municipality "failed to take precautions against future violations." See Bielevicz, 915 F.2d at 851. Plaintiff must allege facts to support his claim that a policymaker had knowledge of and exhibited deliberate indifference in the face of a known threat or high likelihood of injury to Plaintiff, as required to establish Monell liability under a policy or custom theory. Additionally, Plaintiff must allege that a policymaker was aware of the constitutional violation while it was occurring. See Johnson v. Elk Lake Sch. Dist., 283 F.3d 138, 144 (3d Cir. 2002) (finding that absent a showing that "school officials knew of the alleged risk of sexual abuse posed by [the defendant abuser] at a time at which they could have prevented [the

student's] alleged injuries," a plaintiff cannot establish "that her injuries were caused by a policy or custom of the [a]dministration").

Here, Plaintiff alleges that Luzerne County and Larson "had knowledge of [] Renfer's prior violent conduct," and that despite this knowledge, allowed "Renfer to have access to inmates." (Doc. No. 16 ¶ 50.) Two of these three prior incidents allegedly occurred while Defendant Renfer was a police officer employed by the Plymouth Police Department in September 2001 and 2002 and involved an excessive use of force claim and a failure to intervene claim. (Id. ¶¶ 39, 40.) The third incident, which involved an allegation of excessive force, occurred in 2009 while Renfer was a correctional officer in Luzerne County, where he allegedly assaulted an inmate by choking him to the point of causing him to pass out and break his arm. (Id. ¶ 41.)[1]

Plaintiff maintains that Defendants "encouraged, tolerated, ratified, and [were] deliberately indifferent to [inter alia,] . . . the use of unreasonable and excessive force by its' employees . . . monitoring of [c]orrectional [o]fficers whom it knew or should have known were predisposed to violence . . . [and] failure of [c]orrectional [o]fficers to understand and/or follow

---

[1] Defendants move to strike these allegations as impertinent, immaterial, and scandalous. (Doc. No. 24 at 8.) Defendants argue that these allegations of prior tortious conduct "have no possible relation to this case and only serve as highly prejudicial to [] Renfer." (Id.) The Court will deny Defendants' motion to strike these allegations as the Court concludes that they are relevant to establish whether notice on the policymakers was established by a pattern of prior constitutional violations. See Beck, 89 F.3d at 975. Furthermore, while the causal nexus between the alleged enumerated past actions of Renfer may be attenuated, see Palmer v. Marion Cty., 327 F.3d 688, 597 (7th Cir. 2003) (finding that "knowledge of two incidents of misconduct by correctional officers in a period of one year certainly fails to meet the test of a widespread unconstitutional practice by the jail's staff that is so well settled that it constitutes a custom or usage"), especially given that two of the three instances occurred while Renfer appears to have been employed outside of LCCF, the Court concludes at this juncture, that discovery will reveal any shortcomings and a summary judgment motion from Defendants after discovery would better address any absence of evidence. See Carter, 181 F.3d at 357 (providing that the plaintiff should be allowed to pursue discovery in order to determine whether there was a practice or pattern of permitting constitutional violations sufficient to require training or supervision).

established policies, procedures, directives, and instructions regarding the appropriate use of force." (Id. ¶¶ 48-50.)[2]  The reasonable inferences to be drawn from Plaintiff's allegations are that Luzerne County and Larson were deliberately indifferent to the need to control the acts of corrections officers, particularly Renfer, and that Plaintiff's injuries were causally related to Luzerne County and Larson's custom or practice of permitting officers to assault or batter inmates.  Accordingly, the Court finds that Plaintiff has pled sufficient facts to support an unconstitutional policy or custom against Luzerne County and Larson.  Consequently, the Court will deny Defendants' motion to dismiss Count I of the amended complaint.

### ii.    Failure to train

In order to establish municipal liability on a failure to train claim under § 1983, a plaintiff must "identify a failure to provide specific training that has a causal nexus with their injuries and must demonstrate that the absence of that specific training can reasonably be said to reflect a deliberate indifference to whether the alleged constitutional deprivations occurred."  Reitz v. Cty. of Bucks, 125 F.3d 139, 145 (3d Cir. 1997).  A plaintiff must "show both contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents and circumstances under which the supervisor's actions or inaction could be found to have communicated a message of approval to the offending subordinate."  Sullivan v. Warminster Twp., 765 F. Supp. 2d 687, 703-04 (E.D. Pa. 2011) (quoting Montgomery v. De Simone, 159 F.3d 120, 127 (3d Cir. 1998)).  See Berg v. Cty. of Allegheny, 219 F.3d 261, 276 (3d Cir. 2000) ("Failure to adequately screen or train municipal employees can ordinarily be considered

---

[2] While Defendants argue that Plaintiff has failed to allege any specific policies, there is no requirement at the pleading stage for Plaintiff to identify a specific policy to survive a motion to dismiss.  See Carter v. City of Phila, 181 F.3d 339, 358 (3d Cir. 1999).  Such a requirment would be "unduly harsh" at this early juncture.  Id.; see also Kokinda v. Breiner, 557 F. Supp. 2d 581, 590 (M.D. Pa. 2008).

deliberate indifference only where the failure has caused a pattern of violations.").  Courts

recognize that "a failure to train may amount to deliberate indifference where the need for more

or different training is obvious, and inadequacy very likely to result in violation of constitutional

rights."  Carter, 181 F.3d at 357 (citing City of Canton v. Harris, 489 U.S. 378, 389 (1989)).

The Third Circuit applies a three-part test to determine whether the deliberate

indifference requirement has been met:

> it must be shown that (1) municipal policymakers know that
> employees will confront a particular situation; (2) the situation
> involves a difficult choice or a history of employees mishandling;
> and (3) the wrong choice by an employee will frequently cause
> deprivation of constitutional rights.

Carter, 181 F.3d at 357 (citing Walker v. City of N.Y., 974 F.2d 293, 297098 (2d Cir. 1992)).

Notice is critical to a failure to train theory.  "Without notice that a course of training is

deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a

training program that will cause violations of constitutional rights."  Connick v. Thompson, 563

U.S. 51, 62 (2011).  Accordingly, a pattern of similar constitutional violations is ordinarily

required to show deliberate indifference in the context of a failure to train theory.  Bryan Cty.,

520 U.S. at 409; see also Connick, 563 U.S. at 63 n.7 ("[C]ontemporaneous or subsequent

conduct cannot establish a pattern of violations that would provide notice to the city and the

opportunity to conform to constitutional dictates.").

Here, Plaintiff alleges that Luzerne County and Larson were aware of prior violent

assaults of inmates, including those specifically involving Renfer, and that despite this known

harm, the supervisory officials failed to appropriately respond in the face of the pattern of such

injuries.  (Doc. No. 16 ¶¶ 48-50.)  Accepting these facts and all reasonable inferences therefrom

as true, the Court finds that Plaintiff has alleged that he suffered a deprivation of a constitutional

right, and that the alleged deprivation was due to the deliberate failure of policymakers to train their employees not to violate that right, as well as the indifference of policymakers to those potential violations. The Court presumes that discovery will reveal the exact nature of these failings, Defendants can file a summary judgment motion after the conclusion of the discovery period to address any absence of relevant evidence. See Carter, 181 F.3d at 357 (providing that the plaintiff should be allowed to pursue discovery in order to determine whether there was a practice or pattern of permitting constitutional violations sufficient to require training or supervision).[3] Accordingly, Defendants' motion will be denied as it relates to this point.

## C.    Count II: Failure to Protect

The Supreme Court has declared that "the Due Process Clauses [of the Fifth and Fourteenth Amendments] generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive an individual." DeShaney v. Winnebago Cty. Dept. of Soc. Servs., 489 U.S. 189, 196 (1989). Although the Due Process clauses prohibit the government from acting in ways that would deprive citizens of rights, the clauses do "not require the State to provide its citizens with particular protective services, [and] it follows that the State cannot be held liable under the Clause for injuries that could have been averted had it chosen to provide them." Id. at 196-97.

However, the Third Circuit has described two situations in which States have an affirmative duty to protect a citizen under the Constitution: "[f]irst, the state has a duty to protect or care for individuals when a 'special relationship' exists" and "[s]econd, the state has a duty

---

[3] Given the Court's conclusion that Plaintiff has adequately pled a failure to train claim based upon a pattern of violations, the Court need not address the "narrow range of circumstances" in which a failure to train claim may be established absent a showing of a pattern of violations. See Brown, 520 U.S. at 409.

when a 'state-created danger is involved.'" <u>See</u> <u>Sanford v. Stiles</u>, 456 F.3d 298, 304 (3d Cir. 2006); <u>see</u> <u>also</u> <u>Gardner v. Luzerne Cty.</u>, 645 F. Supp. 2d 325, 333 (M.D. Pa. 2009).  With respect to the first situation, a special relationship is created "when the State takes a person into its custody and holds him there against his will," for "the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." <u>DeShaney</u>, 489 U.S. at 199-200; <u>see</u> <u>also</u> <u>Bright v. Westmoreland Cty.</u>, 443 F.3d 276, 280 (3d Cir. 2006).

Here, Plaintiff alleges that he was incarcerated at LCCF as a pretrial detainee.  (Doc. No. 16 ¶ 18.)  Accordingly, the Court concludes that Defendants had a constitutional duty to protect Plaintiff based on the existence of a special relationship whereby the State had custody of Plaintiff.  <u>See</u> <u>Collins v. City of Harker Heights, Tex.</u>, 503 U.S. 115, 127-29 (1992) (providing that the Due Process Clause of the Fourteenth Amendment imposes an affirmative duty to protect individuals including pretrial detainees).  Next, to establish a failure to protect claim, a plaintiff must prove that the official acted with deliberate indifference to his health and safety.  <u>See</u> <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994).  Because the Court has already performed this deliberate indifference analysis <u>supra</u> and concluded that Plaintiff has adequately pled the same, the Court will deny Defendants' motion to dismiss Count II of the amended complaint.

### D.     Count III: Failure to Protect / Intervene

Defendants move to dismiss Count III against Baluta on the grounds that Plaintiff's amended complaint contains no facts alleging his "personal involvement, proximity, or actions" in regards to the alleged constitutional violations.  (Doc. No. 24 at 11.)  Prison officials have a duty to protect prisoners from violence at the hands of others.  <u>See</u> <u>Farmer</u>, 511 U.S. at 833.  Accordingly, prison officials and employees may be liable for failing to protect an inmate from

the use of excessive force if they are deliberately indifferent to a substantial risk of serious harm to the inmate. Id. at 834. To set forth a failure to protect claim, a plaintiff must plead facts raising a reasonable inference of (1) a substantial risk of serious harm, (2) the defendant's deliberate indifference to that risk, and (3) causation. See Hamilton v. Leavy, 117 F.3d 742, 747 (3d Cir. 1997). The plaintiff must show, inter alia, that the officer was subjectively aware of a substantial risk of serious harm. Caldwell v. Warden, FCI Talladega, 748 F.3d 1090, 1099 (11th Cir. 2014). An officer's subjective awareness has two elements: "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. Moreover, an officer has a duty to take reasonable steps to prevent a victim from another officer's use of excessive force, but "an officer is only liable if there is a realistic and reasonable opportunity to intervene." Smith v. Mensinger, 293 F.3d 641, 651 (3d Cir. 2002) (stating that when an officer "fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place in his presence, the officer is directly liable under Section 1983").

The Court finds that Plaintiff has adequately pled a failure to intervene claim against Baluta. Plaintiff alleges that he was escorted to another section of the prison by Renfer and Baluta. (Doc. No. 16 ¶ 25.) Plaintiff further alleges that during this escort, Renfer and Plaintiff had a "heated exchange[]" that led to Renfer handcuffing Plaintiff behind his back and ultimately allegedly lifting Plaintiff in the air while his hands were handcuffed behind his back before slamming him head-first into the concrete floor. (Id. ¶¶ 26-29.) Plaintiff also alleges that Baluta failed to stop, intervene, and/or minimize the assault of Plaintiff by Renfer. (Id. ¶ 33.) Accordingly, Defendants' motion to dismiss will be denied as to this claim.

### E.    Count V: First Amendment Access to the Courts Claim

Defendants move to dismiss Plaintiff's access to the courts claim against Defendants Larson, Rockovich, and Capitano.  (Doc. No. 24 at 11.)  In support of their motion, Defendants argue that Plaintiff has not demonstrated an actual injury required to maintain this cause of action and that Plaintiff has no constitutional right to compel an investigation by county or state detectives, or to compel the District Attorney's office to investigate or bring criminal charges.  (Id. at 12.)  Plaintiff alleges in his amended complaint that: because he is incarcerated, he has a limited opportunity or ability to pursue criminal charges; Larson and Rockovich have refused to file a complaint with the Luzerne County District Attorney's Office; and Capitano has failed to investigate the assault and seek approval from the District Attorney to file such charges.  (Doc. No. 16 ¶¶ 62-66.)

> Where prisoners assert that defendants' actions have inhibited their opportunity to present a past legal claim, they must show (1) that they suffered an 'actual injury'– that they lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim; and (2) that they have no other 'remedy that may be awarded as recompense' for the lost claim other than in the present denial of access suit.

Monroe v. Beard, 536 F.3d 198, 204 (3d Cir. 2008) (citing Christopher v. Harbury, 536 U.S. 403, 415 (2002)); see also Toussaint v. Good, 276 F. App'x 122, 124 (3d Cir. 2008) (affirming the denial of a First Amendment claim alleging denial of access-to-the-courts where Plaintiff set forth no specific facts regarding the alleged harm and provided no dates of attempted filing or details describing how his litigation was affected); see also Lewis v. Casey, 518 U.S. 343, 354 (1996) (internal citations omitted) (providing that "the injury requirement is not satisfied by just any type of frustrated legal claim" and access-to-the-court cases may involve attempts by inmates to pursue "direct appeals from the convictions for which they were incarcerated . . .

habeas petitions," and civil right actions "<u>i.e.</u>, actions under 42 U.S.C. § 1983 to vindicate basic constitutional rights").

Here, the Court finds that Plaintiff has failed to plead a First Amendment claim of denial to access-to-the-court. Plaintiff does not allege any facts regarding any attempt made by him in pursuing a private criminal complaint against Renfer. Moreover, while Plaintiff alleges that due to his incarceration, he has a limited ability to pursue criminal charges, this same limited ability did not appear to prohibit him in filing the instant civil rights action. Additionally, it does not appear that Plaintiff was attempting to initiate a criminal appeal, habeas petition, or civil rights action and, therefore, the injury requirement has not been satisfied. <u>See</u> <u>Casey</u>, 518 U.S. at 354. Accordingly, because Plaintiff has not adequately pled a first amendment claim, Defendants' motion to dismiss this claim will be granted and Capitano will be dismissed from this action.

### F.     Punitive Damages

Defendants also move to dismiss all claims of punitive damages against all Defendants. (Doc. No. 24 at 13.) "[A] jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." <u>Smith v. Wade</u>, 461 U.S. 30, 56 (1983). Whether an award of punitive damages is warranted involves "a fact-intensive issue inappropriate for resolution at the motion to dismiss stage, where no factual record has yet been developed." <u>Miller v. Helm</u>, Civ. No. 17-1590, 2017 WL 6405738, at *7 (M.D. Pa. Dec. 15, 2017); <u>see</u> <u>also</u> <u>Campbell v. Balon</u>, Civ. No. 16-779, 2017 WL 2880856, at *19 (M.D. Pa. July 6, 2017); <u>Bobrick Washroom Equip., Inc. v. Scranton Prods., Inc.</u>, Civ. No. 14-853, 2017 WL 2126320, at *11 n.15 (M.D. Pa. May 16, 2017). However, punitive damages under § 1983 are not available as to claims made against municipalities. <u>Newport v. Fact</u>

Concerts, Inc. 453 U.S. 247 (1981); Kokinda, 557 F. Supp. 2d at 595; Anderson v. Cty. of Salem, Civ. No. 09-4718, 2010 WL 3081070, at *14-15 (D.N.J. Aug. 5, 2010); Bennett v. Lopez, No. 3:17-cv-2031, 2018 WL 1293259, at *5 (M.D. Pa. Mar. 13, 2018).

Because punitive damages are not available against municipalities, the Court will grant Defendants' motion to dismiss all claims of punitive damages against Luzerne County. However, at this stage, granting Plaintiff the benefit of all reasonable inferences, the Court finds Plaintiff's allegations sufficient to support his claim for punitive damages against the remaining individual Defendants. Accordingly, Defendants' motion will be denied as to the remaining individual Defendants.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss Plaintiff's amended complaint (Doc. No. 23), will be granted in part as to Count V of the amended complaint, and all claims of punitive damages against Luzerne County, as well as all claims against Capitano will also be dismissed from this action. Defendants' motion to dismiss will be denied in all other respects. An appropriate Order follows.